SUPERIOR COURT
OF THE

RICHARD F. STOKES
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

April 15, 2020

Christopher S. Koyste, Esquire
Law Office of Christopher S. Koyste LLC
709 Brandywine Blvd.
Wilmington, DE 19809

Rhamir Waples
SBI# 00805300
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE: *State of Delaware v. Rhamir Waples*, Def. ID# 1506014219A (R-1)

Dear Mr. Koyste and Mr. Waples:

Pending before the Court are a motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61") which defendant Rhamir Waples ("defendant") filed and a motion to withdraw as counsel which Mr. Koyste filed. This is my decision granting the motion to withdraw and denying the motion for postconviction relief.

This case has a unique procedural history. In June, 2015, defendant and seven other individuals were indicted on 81 counts of various offenses arising from home invasion robberies in Sussex County. One of those home invasions resulted in the murder of two individuals.

1

Defendant initially was indicted on the following charges: racketeering (2 counts); murder in the first degree (2 counts); possession of a firearm during the commission of a felony (25 counts); home invasion (3 counts); robbery in the first degree (3 counts); attempted robbery in the first degree (1 count); conspiracy in the first degree (1 count); conspiracy in the second degree (2 counts); assault in the second degree (1 count); reckless endangering in the first degree (1 count); and wearing a disguise (1 count). Defendant's trial was severed from the trials of his co-defendants. Within his case, some of the charges were severed from others. Accordingly, an amended indictment was filed and defendant went to trial on the following charges: murder in the first degree (2 counts); possession of a firearm during the commission of a felony (15 counts); conspiracy in the first degree (1 count); home invasion (1 count); robbery in the first degree (2 counts); and conspiracy in the second degree (1 count).

At the end of the multi-weeks trial, the conspiracy in the first degree charge was dismissed. The jury found defendant guilty as charged on the remaining 21 counts.

Defendant was facing two life sentences plus 452 years of incarceration.

Thereafter, trial counsel filed a motion to dismiss or, in the alternative, a motion for a new trial. The Court denied the motion.

Soon thereafter, the State of Delaware ("the State") and the defense entered into an agreement whereby the conviction would be vacated if defendant entered into a guilty plea to various charges. A hearing was held before the Court on February 22, 2018. The Court agreed to the vacating of the conviction in exchange for defendant's entry into the plea. The following occurred at the plea hearing.

MR. PEDERSEN: Pursuant to that agreement, Your Honor, Mr. Waples is

here today to enter a plea to four charges, the first being murder in the second degree; second, possession of a firearm during the commission of a felony; third, home invasion; and, fourth, conspiracy in the second degree.

The remaining charges in both - - the remaining charges in the indictment are to be nolle prossed.

Your Honor, pursuant to the agreement, there's a request for immediate sentencing. As to the murder charge, Your Honor, the State is recommending 25 years of Level 5 suspended after 15, which is the minimum mandatory, for six months of Level 4 Work Release followed by two years of Level 3 probation.

As to the firearm charge, Your Honor, the State is recommending four years of Level 5.

As to the home invasion, the State is recommending 15 years of Level 5 suspended after six years for two years of Level 3, that to run concurrent.

Finally, Your Honor, on the conspiracy charge, State is recommending two years of Level 5 suspended for a year at Level 3. That is also to run concurrent.

There's to be no contact with the persons listed on the Plea Agreement, Your Honor. And there is a request that he undergo a mental health evaluation and comply with any recommendations for treatment, and obtain his GED.

Your Honor, I can tell you that today's plea is the product of probably the most extensive communications that I've ever had with a client regarding the entrance of a pea. We not only had the opportunity to discuss this - - a similar type of plea at length before his first trial, but we've probably now had five or six opportunities to speak in person regarding this plea since his conviction.

In addition, Your Honor, we've exchanged several letters regarding the Plea Agreement. I've also - - although Mr. Waples is an adult, Your Honor, I've also copied and engaged his mother and grandfather in my communications with him, I believe he's had an opportunity not only to discuss this with me but also with them.

So, Your Honor, it is my belief that this is certainly a knowingly, intelligently and voluntarily offered plea, and I ask that you please accept it.[1]

After defendant was placed under oath, the following colloquy occurred:

THE COURT: Is it your personal decision today, Mr. Waples, to plead guilty to murder in the second degree, possession of a firearm during the commission of a felony, home invasion, and conspiracy in the second degree?

---

[1]Transcript of February 22, 2018 Proceedings, located at pages A129-131 of Docket Entry 127, which is captioned as Appendix to Memorandum in Support of Motion to Withdraw as Counsel Pursuant to Rule 61(e)(6) for Petitioner Rhamir Waples (hereinafter "D.E. 127 at A____").

THE DEFENDANT: Yes.[2]

Later, the colloquy took place as follows:

THE COURT: All right.
You've been with Mr. Pederson[3] [sic] a long time?

THE DEFENDANT: Yes.

THE COURT: He's been your advocate. So my question to you today is: Are you satisfied with Mr. Pederson's [sic] services?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any complaints at all?

THE DEFENDANT: No, Your Honor.

THE COURT: Anything he has done or not done that upsets you?

THE DEFENDANT: No, Your Honor.

THE COURT: Is Mr. Pederson [sic] or anybody on earth forcing you to plead guilty today?

THE DEFENDANT: No, Your Honor.

THE COURT: This is your personal decision?

THE DEFENDANT: Yes.[4]

The Court then reviewed with defendant, in detail, the various rights he was giving up and noted that defendant was well aware of those rights because he had experienced them during his trial. In particular, the pertinent portion of this colloquy was as follows:

---

[2]D.E. 127 at A132.

[3]The transcript mistakenly shows Mr. Pedersen's name as "Pederson".

[4]D.E. 127 at A134-A135.

4

THE COURT: You give up the opportunity, by pleading guilty, to basically have what you've already had, the opportunity to have a jury trial where you're presumed innocent until the State could establish your guilt beyond a reasonable doubt to a jury of 12 citizens of Sussex County that would constitute the 12 people that would decide the case.

For that jury to reach a verdict, as you are aware, it has to be unanimous. That simply means to find you not guilty, all 12 have to agree. To find you guilty, all 12 have to agree. If they all 12 can't agree, it's a hung jury, a tie ball game. You could be retried.

You give up the right to a speedy and public trial, having your lawyer with you throughout the entire process. If you wanted to go to trial, as you've done, you've seen what happens, the State must be put to the test to try to prove your guilt beyond a reasonable doubt and overcome your presumption of innocence by calling witnesses into the courtroom, have those witnesses testify under oath in your presence and before the jury, and then Mr. Pederson [sic] gets to have at them with cross examination, as he did last year.

You have subpoena power. That means that defense witnesses can be subpoenaed if you had a trial. You have a decision - - which you made in the last case - - you have the decision whether you wish to testify or remain silent, and that's your decision completely. Mr. Pederson [sic] can advise, but he does not control that.

You have the right of appeal of an adverse verdict, a guilty verdict at trial. By pleading guilty, there is no trial, there is no appeal. All those rights are waived. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you wish to waive these rights and enter this guilty plea?

THE DEFENDANT: Yes, Your Honor.[5]

The Court again listed the charges to which defendant wanted to plead guilty and questioned defendant as follows:

THE COURT: ***
You're familiar with each of these charges?

THE DEFENDANT: Yes, Your Honor.

---

[5] D.E. 127 at A135-A137.

THE COURT: And I know you've discussed the evidence because we had the evidence at the trial. But you've discussed the evidence, this plea with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've had sufficient time to think about what you're doing here today?

THE DEFENDANT: Yes, Your Honor.[6]

The defendant then admitted he committed the crimes charged.

The following then occurred regarding the sentencing aspect of the plea agreement:

THE COURT: There is a recommendation being made to - - basically the recommendation is that the State and the defense are in agreement as to the recommendation as to a sentence they are asking me to impose if I accept this guilty plea.
I have met with your lawyer and I've met with the State. And I am inclined to follow that recommendation. But you understand that if I vary at all, as long as I'm within the statutory limits, it sticks, nobody gets a do-over.
Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anybody promised you or told you absolutely what the judge is going to do?

THE DEFENDANT: No, Your Honor.[7]

The Court then reviewed with defendant the Guilty Plea form and verified that defendant reviewed it with counsel and he understood it and his answers to the questions on it were honest.

The following exchange occurred:

THE COURT: Now, my experience, Mr. Waples, has been that sometimes when people are in jail, other people give them what I call jailhouse lawyer

[6]D.E. 127 at A137-A138.

[7]D.E. 127 at A138-A139.

6

advice, and sometimes there is like, Man, I wish I could start all over again, take it back, et cetera. So I'm going to basically say to you what the preacher man says at the wedding: Speak now or forever hold your peace.

If there is anything at all that gets in the way of you knowingly, voluntarily and intelligently and permanently - - by permanently, I mean don't be writing motions, letters, et cetera, saying: I want to start all over again.

Do you understand what I'm saying?

THE DEFENDANT: Yes, Your Honor.

THE COURT: ***

So if there's anything, anything, anybody, any communications, any problems, any headaches, whether it is with Mr. Pederson [sic], whether it is with the police, whether it is with the prosecutor, whether it is with this judge, whether it is with your family, whether it is with your brother, whether it is with the little old lady who lives down the lane, anything at all that gets into the way of you permanently, knowingly, voluntarily entering this guilty plea today, talk to me know or forever hold your peace.

Any issues, complaints or headaches at all?

THE DEFENDANT: No, Your Honor

THE COURT: You're asking me to accept the plea?

THE DEFENDANT: Yes.

THE COURT: You're hoping for the best as far as what you've negotiated?

THE DEFENDANT: I'm hoping from the State recommendation that - -

THE COURT: - - that I'll follow the recommendation, right?

THE DEFENDANT: Yes.
***

THE COURT: You don't have to but it's your sentence, is there anything you wish to say before I impose sentence?

THE DEFENDANT: Sorry for everything that happened. I was young. Didn't know any better. If I could do it over again, I would.[8]

---

[8]D.E. 127 at A141-A143.

7

The Court followed the recommendation to which the State and the defense agreed and sentenced defendant as follows. As to the murder in the second degree conviction, he was sentenced to 25 years at Level 5, and after serving the minimum mandatory 15 years, the balance was suspended for two and a half years of descending levels of probation. As to the firearm charge, he was sentenced to four years at Level 5. As to the home invasion charge, he was given 15 years at Level 5 and after serving 6 years at Level 5, the balance was suspended for two years of probation. Finally, as to the conspiracy charge, he was given 2 years at Level 5 suspended for one year of probation.

At the end of the sentencing, the Judge, who had presided over all of the proceedings against defendant, stated:

> Whether you agree completely with me or not, I need to tell you that it is my opinion that Mr. Pederson [sic] has been top drawer in the representation of you. He has fought long and hard even when the battle looked like it was all lost and you were going to jail for the rest of your life potentially.[9]

Defendant timely filed his Rule 61 motion. In that motion, he alleges two grounds for relief. He maintains that trial counsel was ineffective for two reasons:

> Ground one: Counsel Failed to Investigate Insanity Defense
> Before advising movant counsel failed to get records or mental health evaluation that would reduced [sic] culpability.

> Ground two: Counsel failed to prepare movant for allocution
> Counsel failed to investigate and prepare the movant for sentencing.

In reviewing the matter, the Court employs the following standards.

> To prevail on a claim of ineffective assistance of counsel within the context of a guilty plea, ... [defendant] was required to show that (i) his counsel's conduct fell below an objective standard of reasonableness, and (ii) there is a

---

[9]D.E. 127 at A144.

8

reasonable probability that, but for the alleged errors of counsel, the movant would not have pleaded guilty and would have insisted on going to trial. A defendant must make concrete allegations of cause and actual prejudice to substantiate a claim of ineffective assistance of counsel. Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable. (Footnotes and citations omitted).[10]

Postconviction counsel has reviewed defendant's claims. Defendant has not submitted any additional argument in response to postconviction counsel's motion to withdraw. The Court reviews defendant's claims in light of postconviction counsel's submissions as well as the applicable law.

1) Trial Counsel Failed to Investigate Insanity Defense.

As postconviction counsel notes, defendant's first claim may be interpreted in three different ways.

The first interpretation is that defendant is asserting trial counsel was ineffective for failing to investigate, and raise, an insanity defense at the trial in which he was convicted.

The plea colloquy was thorough and detailed. Defendant indicated he was waiving his rights and that he was satisfied with his attorney's representation of him. "Absent clear and convincing evidence to the contrary, ... [defendant] is bound by his sworn representations during the guilty plea colloquy."[11]

If defendant wished to preserve a claim that trial counsel was ineffective in not pursuing an insanity defense during his trial, then he should have proceeded with sentencing on his conviction, appealed, and thereafter, assuming his conviction was affirmed, asserted this claim of

---

[10] *Johnson v. State*, 211 A.3d 1075, 2019 WL 2288339, *2 (Del. May 28, 2019) (TABLE) (footnotes and citations omitted).

[11] *Johnson v. State, supra* at *3 (footnote and citation omitted).

ineffective assistance in a subsequent Rule 61 motion. Instead, defendant waived this option when he entered the guilty plea, which was knowing, intelligent and voluntary. [12] This claim fails.

The second interpretation of defendant's first claim is that he is arguing his mental health precluded the entry of a valid plea. In order for the plea to have been defective, defendant must establish he was not competent to have entered the plea. The competency test, as explained in *Weeks v. State*,[13] is whether defendant had a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him.'" The court, while taking the plea, does not normally inquire into a competency issue; instead, it pursues the matter only if it has reason to doubt the defendant's competence.[14] Defendant has not produced anything to support a claim of incompetency at the time he entered the plea nor has he demonstrated that trial counsel was aware of any competency issue. The only evidence concerning his competency is what appears on the record during the plea colloquy and that record clearly shows defendant communicated meaningfully with his attorney and understood the guilty plea in which he actively participated. Thus, this claim fails.

The third interpretation of the first claim is that defendant is arguing trial counsel was ineffective for failing to present any mental health issue to the sentencing judge. Defendant has

---

[12]*Id.*

[13] 653 A.2d 266, 270 (Del. 1994), quoting *Dusky v. U.S.*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *Accord Ellingsworth v. State*, 810 A.2d 349, 2002 WL 31477130, *1 (Del. 2002)(Table).

[14]*Weeks v. State, supra.*

10

failed to make any concrete allegations regarding a mental health issue; i.e., what the issue was or how it would have affected his case.

The record before the Court shows that trial counsel thoroughly and competently represented defendant. Furthermore, the record shows defendant received a substantial benefit by entering into the plea. Prior to the entry of the guilty plea, defendant was facing two life sentences plus 452 years. The guilty plea reduced this sentence to a total one of 25 years of incarceration with an additional 6 months of Level 4 probation followed by 2 years of Level 3 probation. The trial judge followed the agreed-upon sentencing recommendation. In order to show prejudice, defendant must present concrete evidence of a mental health issue which would have resulted in a sentence of less than the 25 years. Defendant's failure to advance any substance regarding a mental health issue precludes this Court from considering whether there was cause or prejudice regarding a mental health issue and defendant's sentencing; thus, this claim fails.[15]

For the foregoing reasons, defendant's first claim fails.

2) Counsel Failed to Prepare Movant for Allocution.

I turn now to defendant's second claim: trial counsel was ineffective in preparing defendant for his plea hearing and sentencing.

The record shows the following. Trial counsel met with defendant extensively regarding the plea. Defendant was satisfied with trial counsel's representation of him, he had had sufficient time to meet with trial counsel, he had truthfully answered all questions involved in entering the plea, and he understood the consequences of entering the plea. Thus, the record establishes trial

---

[15]*Younger v. State,* 580 A.2d 552, 555, 556 (Del. 1990).

11

counsel was effective in preparing defendant for his plea and immediate sentencing.

As reviewed above, the record also shows defendant received an enormous benefit by entering into the plea. To overcome this conclusion that defendant benefitted from the plea and sentence imposed, defendant was required to establish, through concrete, solid information, that anything he could have presented at the sentencing would have resulted in a lesser sentence than the one to which the parties agreed.[16] Defendant made no attempt to present anything of this sort. This claim fails because it is vague and conclusory.[17]

Postconviction counsel has reviewed the record and has found no meritorious issues to raise. This Court has reviewed the record and submissions and concludes postconviction counsel's conclusion is valid. Thus, postconviction counsel's motion to withdraw is GRANTED. The Court further concludes that defendant has failed to state a claim for relief and thus, defendant's motion for postconviction relief is DENIED.

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
Martin J. Cosgrove, Jr., Esquire
Thomas A. Pedersen, Esquire

---

[16] *Id.*

[17] *Id.*

12